FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 05, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JENNIFER Y.,<br><br>     Plaintiff,<br><br> v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>     Defendant. | NO: 1:17-CV-3085-FVS<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND DENYING<br>PLAINTIFF'S MOTION FOR<br>SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross motions for summary judgment. ECF Nos. 12 and 13. This matter was submitted for consideration without oral argument. The plaintiff is represented by Attorney D. James Tree. The defendant is represented by Special Assistant United States Attorney Danielle R. Mroczek. The Court has reviewed the administrative record and the parties' completed briefing and is fully informed. For the reasons discussed below, the court **GRANTS** Defendant's Motion for Summary Judgment, ECF No. 13, and **DENIES** Plaintiff's Motion for Summary Judgment, ECF No. 12.

**JURISDICTION**

Plaintiff Jennifer Y.[1] protectively filed for disability insurance benefits on April 9, 2013. Tr. 147-53. Plaintiff alleged an onset date of May 1, 2012. Tr. 147. Benefits were denied initially (Tr. 91-97) and upon reconsideration (Tr. 99-103). Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held before ALJ Ilene Sloan on June 30, 2015. Tr. 29-65. At the hearing, Plaintiff amended to a closed period of disability from May 1, 2012 to March 31, 2014. Tr. 37-38. Plaintiff was represented by counsel and testified at the hearing. The ALJ denied benefits (Tr. 9-28) and the Appeals Council denied review. Tr. 1. The matter is now before this court pursuant to 42 U.S.C. § 405(g).

**BACKGROUND**

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and will therefore only the most pertinent facts are summarized here.

Plaintiff was 34 years old at the time of the hearing. Tr. 39. She graduated from high school. Tr. 39. She resides with her husband and two kids, who are 13 and 14 years old. Tr. 39-40. Plaintiff has work history as a caterer helper, short

---

[1] In the interest of protecting Plaintiff's privacy, the Court uses Plaintiff's first name and last initial, and, subsequently, only 'Plaintiff' throughout this decision.

order cook, laundry worker, photographer, cashier, and vendor. Tr. 40-42, 60. She

testified that she could not work during the closed period because she had too

many "call-ins" and her attendance was not good because of her headaches. Tr.

42.

Plaintiff testified that she has six to eight migraine headaches a month, and

they last anywhere from four to twelve days, sometimes longer. Tr. 50-51. When

she has a headache she lays in a dark room; her ears ring "so bad she can hardly

hear"; she sees spots; she sometimes vomits; and she cannot get out of bed. Tr. 50-

52. She testified that she has problems using her right shoulder; is in constant pain

or aches; she drops things; and her hand goes numb and twitches. Tr. 53. She

does the grocery shopping, does laundry, goes to church, goes out to eat, goes to

Yakima Speedway once a month at the most, goes fishing and tent camping, and

goes to her kids' sporting events. Tr. 46-50. Plaintiff reported that she has been on

Percocet for two years, but does not take it when she has a headache because she

does not want "rebound headaches"; and only takes it for her shoulder as needed.

Tr. 52-53, 57.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be

"of such severity that he is not only unable to do his previous work[,] but cannot,

considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy." 42 U.S.C. §

423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §

404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's

work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in

"substantial gainful activity," the Commissioner must find that the claimant is not

disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two. At this step, the Commissioner considers the severity of the

claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers

from "any impairment or combination of impairments which significantly limits

[his or her] physical or mental ability to do basic work activities," the analysis

proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment

does not satisfy this severity threshold, however, the Commissioner must find that

the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner

must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff did not engage in substantial gainful activity during the requested closed period of May 1, 2012 through March 31, 2014. Tr. 14. At step two, the ALJ found Plaintiff had the following severe impairment: headaches/migraines. Tr. 15. At step three, the ALJ found that during the requested closed period from May 1, 2012 through March 31, 2014, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. Tr. 17. The ALJ then found that Plaintiff had the RFC

to perform medium work as defined in 20 CFR 404.1567(c) during the requested closed period from May 1, 2012 through March 31, 2014, including the following limitations. She was able to occasionally [sic] ramps and stairs, as well as ladders, ropes and scaffolds. She had an unlimited ability to balance, stoop, kneel, crouch and crawl. She needed to avoid concentrated exposure to hazards.

Tr. 17-18. At step four, the ALJ found that during the requested closed period from May 1, 2012 through March 31, 2014, Plaintiff was capable of performing her past relevant work as a short order cook. Tr. 22. In the alternative, at step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were other jobs that exist in significant numbers in the national economy that Plaintiff was able to perform during the requested closed period, including: industrial cleaner, cook/helper, and kitchen helper. Tr. 23. On that basis, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, for the requested closed period from May 1, 2012 through March 31, 2014. Tr. 24.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act. ECF No. 12. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ erred at step two;

2. Whether the ALJ properly weighed the medical opinion evidence; and

3. Whether the ALJ properly considered Plaintiff's symptom claims.

**DISCUSSION**

**A. Step Two**

Plaintiff argues the ALJ improperly failed to identify her "right upper extremity impairment" as a medically determinable impairment; and improperly found Plaintiff's obesity was "non-severe" during the closed period. ECF No. 12 at 5-9.

*1. Right Upper Extremity*

The ALJ found "[t]he evidence also does not show that under 20 CFR 404.1529(b), a torn right rotator cuff is medically determinable because pain symptoms alone, without objective medical findings, are insufficient to establish any condition as even non-severe for Social Security disability purposes." Tr. 15. At step two, a claimant must establish that he or she suffers from a medically determinable impairment. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1004-1005 (9th Cir. 2005). The claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings. 20 C.F.R. § 404.1508 (1991). "Under no circumstances may the existence of an impairment be established on the basis of symptoms alone." S.S.R. 96-4p. Thus, "regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the

absence of objective medical abnormalities, i.e., medical signs and laboratory findings." *Id.*

Plaintiff argues the ALJ's finding that her upper right extremity pain was not a medically determinable impairment was based on an "inaccurate reflection of the record;" and in support of this argument, Plaintiff cites "signs" of Plaintiff's alleged impairments, including: findings of limited range of motion (ROM), slightly decreased strength of the infraspinatus, muscle tightness, and poor motor function. ECF No. 12 at 5-6 (citing Tr. 311, 318-22, 365-66, 386, 392-94, 396-97).[2] However, while not acknowledged by Plaintiff, the ALJ supported this finding with evidence, including: no mention of shoulder pain in "repeated physical examinations" (Tr. 247-48, 254, 272-73, 313-15); 5/5 muscle strength in all extremities (Tr. 284); "normal findings in June - July 2013" with the

---

[2] Plaintiff cites additional records of limited ROM, muscle tightness, decreased or poor grip, poor motor function, crepitus, and tendinitis. ECF No. 12 at 5-6 (citing Tr. 325, 327-29, 332, 382, 384-87, 390). However, these records are from before, and after, the relevant closed period of May 1, 2012 through March 31, 2014. A statement of disability made outside the relevant time period may be disregarded. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010). Thus, the Court will consider only the records from the relevant closed period in determining whether the ALJ erred at step two.

examination of the upper extremities showing normal, pain-free range of motion (Tr. 342, 348); slightly decreased strength in the infraspinatus on strength testing, but no radiation of pain into the right arm and full strength in distal muscles (Tr. 320); and while Plaintiff had diffuse tenderness with the right glenohumeral joint and complained of pain in April 2013, "multiple other examinations as noted were normal." Tr. 15. The ALJ additionally noted that Plaintiff was unable to complete a MRI of her shoulder due to alleged anxiety. Tr. 15, 364.

Finally, the ALJ noted that the record does not contain a diagnosis of any upper extremity impairment from an acceptable medical source. Tr. 15 (citing *Ukolov v. Barnhart*, 420 F.3d 1002, 1005-06 (9th Cir. 2005)). As an initial matter, Plaintiff correctly notes that the ALJ improperly cites *Ukolov* in support of her position that a diagnosis from an acceptable medical source is a "*prerequisite* to a finding that a medically determinable impairment exists." ECF No. 14 at 1-2; Tr. 15 (emphasis added). Rather, as cited in *Ukolov*, SSR 96-4p "emphasized the importance of objective medical evidence to a determination of disability: 'regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities, i.e., medical signs and laboratory findings.'" 420 F.3d at 1005. However, as argued by Defendant, and regardless of the ALJ's misstatement of the holding in *Ukolov*, the instant case is analogous to *Ukolov*, "in

which the Court upheld the finding of no medically determinable impairment because doctors' objective findings were not, in fact, objective; none of them diagnosed or found an impairment; and their findings were inconsistent." ECF No. 13 at 5-7 (citing *Ukolov*, 420 F.3d at 1006). Specifically, in this case, as in *Ukolov*, no "objective diagnostic techniques," such as x-ray or MRI, were taken of Plaintiff's right shoulder; her right upper extremity pain was deemed to be of "uncertain" etiology, she was unable to give a diagnosis (Tr. 364, 390); and, as discussed in detail above, physical findings regarding Plaintiff's shoulder were inconsistent. ECF No. 13 at 5-7; *Ukolov*, 420 F.3d at 1006 ("Because none of the medical opinions included a finding of impairment, a diagnosis, or objective test results, [Plaintiff] failed to meet his burden of establishing [a medically determinable impairment] at step two.").

Based on the foregoing, and regardless of evidence that could be considered more favorable to Plaintiff, it was reasonable for the ALJ to find the overall objective evidence, as opposed to her subjective complaints, did not support Plaintiff's contention that her claimed upper extremity impairment was medically determinable at step two. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("[W]here evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld."). Moreover, even assuming the ALJ erred in not finding Plaintiff's right upper extremity was medically determinable at step two, any error is harmless because Plaintiff fails to cite any

specific limitation in the record regarding her claimed upper right extremity pain that was not included in the assessed RFC. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692, n.2 (9th Cir. 2009); *Molina*, 674 F.3d at 1111 (an error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination").

### 2. Obesity

To be considered "severe" at step two of the sequential analysis, an impairment must significantly limit an individual's ability to perform basic work activities. 20 C.F.R. § 416.920(c); *Smolen v. Chater,* 80 F.3d 1273, 1290 (9th Cir. 1996). An impairment that is "not severe" must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities. SSR 96-3p, 1996 WL 374181 at *1 (July 2, 1996). Plaintiff bears the burden to establish the existence of a severe impairment or combination of impairments, which prevent him from performing substantial gainful activity, and that the impairment or combination of impairments lasted for at least twelve continuous months. 20 C.F.R. §§ 404.1505, 404.1512(a); *Edlund*, 253 F.3d at 1159-60. However, step two is "a de minimus screening device [used] to dispose of groundless claims." *Smolen*, 80 F.3d at 1290. "Thus, applying our normal standard of review to the requirements of step two, we must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or

combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

Here, at step two, the ALJ found Plaintiff's "obesity is a non-severe condition because although her body-mass index (BMI) is 38.6, her musculoskeletal system is grossly normal. She does not have any pain with palpation. She walks with a normal, steady gait." Tr. 15 (citing Tr. 248). Plaintiff argues the ALJ failed to properly consider her obesity at step two; and in support of this argument Plaintiff cites evidence of "tenderness in her spine, [which] further support[s] a need to assess [Plaintiff's] obesity in the context of her musculoskeletal impairments." ECF No. 12 at 8 (citing Tr. 311, 314, 392). However, as noted by Defendant, no provider found Plaintiff's obesity was a severe impairment; nor does Plaintiff identify how her obesity, specifically, resulted in limitations beyond those in the assessed RFC. In addition, Plaintiff contends the ALJ failed to analyze the effects of obesity at step three and in the assessment of Plaintiff's RFC. ECF No. 12 at 8-9. Plaintiff is correct that SSR 02-1p "reminds adjudicators to consider [obesity's] effects when evaluating disability," and directs ALJs "to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's [RFC]." SSR 02-1p at *1 (September 12, 2002), *available at* 2002 WL 34686281. However, when there is no evidence that a claimant's obesity limits her functioning, there is no error when

the ALJ does not consider obesity in the sequential evaluation process. *See Burch*, 400 F.3d at 681. In *Burch*, as in this case:

> There was no evidence before the ALJ, and none in the record, which states that claimant's obesity limits her functioning. Neither treatment notes nor any diagnoses addressed claimant's limitations due to obesity. The medical record is silent as to whether and how claimant's obesity might have exacerbated her condition. Moreover, claimant did not present any testimony or other evidence at her hearing that her obesity impaired her ability to work.

*Id.* at 683. Thus, as Plaintiff has not identified any functional limitations associated with her obesity that were not considered in determining her RFC; the Court finds no error in the ALJ's consideration of obesity at step two, and at any subsequent steps in the sequential evaluation process. *Id.* at 684 ("there is no evidence in the record, of any functional limitations as a result of her obesity that the ALJ failed to consider. . . . [T]he ALJ properly considered [Plaintiff's] obesity to the extent required based on the record."); *see also Molina*, 674 F.3d at 1111 (an error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination").

**B. Medical Opinions**

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir.2001) (citations omitted).

Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir.2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (quotation and citation omitted). Plaintiff argues the ALJ improperly assessed the opinion of examining physician R. Richard Sloop, M.D. ECF No. 12 at 9-12.

In July 2013, Plaintiff was referred to neurology specialist Dr. Sloop for evaluation of her headaches. Tr. 359-61. Dr. Sloop noted that Plaintiff's neurological examination was "completely normal" and an MRI of her head was also "completely normal." Tr. 360. In the "recommendations" section of the evaluation, Dr. Sloop set out "two facts": (1) Dr. Sloop did not recommend disability for headaches, and "would not support her fight for disability on this

basis"; and (2) "the use of any analgesics on a daily basis is completely counter-productive here and will render her even more disabled as the years go by. Even though oxycodone is being ostensibly used for other indications, it will only serve to cause rebound headache." Tr. 360. Further, Dr. Sloop noted that he would only treat Plaintiff "if she agreed to come off the oxycodone entirely and, of course, even then [he expected] this will be a challenge because she is fighting for disability which produces a strong incentive not to improve." Tr. 360. However, Plaintiff was not willing to agree to discontinue oxycodone, so Dr. Sloop did not schedule a follow up appointment. Finally, Dr. Sloop concluded as follows:

> [Plaintiff and I] discussed the etiology of the headache at length. [Dr. Sloop] explained to her that this was most consistent with a migraine inherited type headache. There is nothing wrong with her brain. More MRIs and CT scans will give no additional information. This is not from high pressure around the brain, etc., etc. She needs to recognize that and take definitive steps to do something positive about the headache. I also explained to her that she is looking at the next few weeks, but with her present course she can expect to suffer daily, unremitting headaches for the next 50-years with increasing escalation of narcotic doses, which, of course, will dramatically diminish her quality of life likely for as long as she lives. This seems like a very miserable prospect with the present course, but it is her choice."

Tr. 361. The ALJ assigned Dr. Sloop's opinion significant weight. Tr. 20-21.

Plaintiff acknowledges that Dr. Sloop opined Plaintiff's use of analgesics to treat her headache pain was "counterproductive;" but also contends that "there was no indication [Dr. Sloop] did not believe [Plaintiff] suffered considerably from her migraines." ECF No. 12 at 10. In apparent support of this inference, Plaintiff quotes the above-referenced language from Dr. Sloop's evaluation indicating that

"with [Plaintiff's] present course she can expect to suffer daily, unremitting

headaches for the next 50-years within increasing escalation of narcotic doses,

which, of course, will dramatically diminish her quality of life likely for as long as

she lives." Tr. 361. Based on this language, according to Plaintiff, Dr. Sloop's

opinion "properly considered, therefore stands for an endorsement of extreme level

of impairment." ECF No. 12 at 10-12. However, the portion of Dr. Sloop's

opinion cited by Plaintiff entirely omits Dr. Sloop's qualifying statement that the

"daily, unremitting headaches" would occur only if Plaintiff continued to use

narcotics; and that it was Plaintiff's choice whether she took "definitive steps to do

something positive about the headache." Tr. 361. Moreover, Dr. Sloop clearly

indicated that he did not support Plaintiff's disability claim on the basis of

headaches. Tr. 360. Thus, the Court agrees with Defendant that "[i]t is unclear

how one could interpret Dr. Sloop's opinion to be anything but adverse to

Plaintiff's disability claim;" and the "ALJ's interpretation of Dr. Sloop's opinion

was the reasonable, if not the only logical one." ECF No. 13 at 11 (citing Tr. 361);

*See Burch*, 400 F.3d at 679 (where evidence is susceptible to more than one

interpretation, the ALJ's conclusion must be upheld). Finally, despite Plaintiff's

general argument that the ALJ "failed to provide any reason not to fully credit" Dr.

Sloop's opinion, Plaintiff failed to identify any specific functional limitations

opined by Dr. Sloop that were not properly accounted for in the assessed RFC.

*See, e.g., Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir.

2010) (where physician's report did not assign any specific limitations or opinions in relation to an ability to work, "the ALJ did not need to provide 'clear and convincing reasons' for rejecting [the] report because the ALJ did not reject any of [the report's] conclusions"). The Court finds no error in the ALJ's consideration of Dr. Sloop's opinion.

## C. Plaintiff's Symptom Claims

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines

the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "allegations concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible" for several reasons. Tr. 18. First, the ALJ found the "medical evidence does not support [Plaintiff's] allegations and instead demonstrates that she retains the RFC to perform a reduced range of medium work." Tr. 18. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by

objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir.

2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*,

885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant

factor in determining the severity of a claimant's pain and its disabling effects.

*Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2). Here, the ALJ set out the

medical evidence contradicting Plaintiff's claims of disabling limitations,

including: normal neurological examinations; normal CT scan of Plaintiff's head

with no identified acute abnormality of the brain stem, cerebellum or pituitary

gland; and the notes of examining neurologist Dr. Sloop that "indicate [Plaintiff's]

headaches are not disabling," including the finding that Plaintiff's "brain is normal

and that weaning off of prescription narcotics causing a rebound effect will likely

ease this condition." Tr. 18, 20 (citing Tr. 276, 284, 292, 360-61). Plaintiff argues

it was error for the ALJ to discredit her symptom claims on this basis, because Dr.

Sloop, whose opinion was accorded significant weight by the ALJ, noted that

"there is nothing wrong with [Plaintiff's] brain," and "[m]ore MRI's and CT scans

will give no additional information." Tr. 361. However, regardless of Dr. Sloop's

opinion that further objective testing would not offer "additional information" as to

the etiology of Plaintiff's headaches, it was nonetheless reasonable for the ALJ to

rely on normal neurological exams and Dr. Sloop's opinion as to Plaintiff's

claimed disability, as support for finding that the overall medical record did not

support the severity of Plaintiff's symptom claims. Tr. 18, 20; *See Thomas*, 278

F.3d at 958-59 ("If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination . . . [t]he ALJ may consider testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which the claimant complains."); *Burch*, 400 F.3d at 679 ("[W]here evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld."). The lack of corroboration of Plaintiff's claimed limitations by the medical evidence was a clear and convincing reason, supported by substantial evidence, for the ALJ to discount Plaintiff's symptom claims.

Second, the ALJ noted that Plaintiff's "full complement of daily activities is inconsistent with an individual whose headaches are disabling." Tr. 20. Plaintiff correctly notes that a claimant need not be utterly incapacitated in order to be eligible for benefits. ECF No. 12 at 13 (citing *Fair*, 885 F.2d at 603); *see also Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) ("the mere fact that a plaintiff has carried on certain activities . . . does not in any way detract from her credibility as to her overall disability."). Regardless, even where daily activities "suggest some difficulty functioning, they may be grounds for discrediting the [Plaintiff's] testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. Here, Plaintiff testified that during the closed period she had six to eight migraine headaches a month, that lasted anywhere from four to twelve days each; and when she has a migraine she has to

lay in a dark and quiet room, cannot get out of bed, has ringing in her ears, and has vomiting. Tr. 50-52. However, as noted by the ALJ, Plaintiff testified that she attends her children's football, volleyball, and soccer games; goes to car races at Yakima Speedway; camps and fishes; watches television; drives; has barbeques; spends time with friends; vacations; goes out to eat and the movies; attends church; does household chores; child care; and grocery shops.[3] Tr. 20, 46-50; *see Rollins*,

---

[3] The ALJ also found Plaintiff's activities after the closed period were "inconsistencies that that further reduce the credibility" of Plaintiff's allegations because they indicated Plaintiff was able to retain the RFC identified by the ALJ, including: Plaintiff's employment at the time of the hearing, and evidence that Plaintiff was exercising at the gym in August 2014 and March 2015. Tr. 18-19, 47, 386. Additionally, the ALJ noted that the "medical record does not evidence any significant or dramatic changes that would enable [Plaintiff] to engage in these activities now but not during the requested closed period." Tr. 19. As noted above, a statement of disability made outside the relevant time period is of limited relevance. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010). However, regardless of whether the ALJ erred in considering evidence of Plaintiff's activities from outside the relevant period, any error is harmless because, as discussed in detail above, the ALJ's finding that Plaintiff's symptom claims were inconsistent with daily activities during the closed period was

261 F.3d at 857 (Plaintiff's ability to care for children without help during any period may undermine claims of totally disabling symptoms). Plaintiff argues that the ALJ erred in discrediting her symptom claims based on activities because on "bad migraine days she did not perform any of these activities and did not get out of bed at all." ECF No 12 at 13-14 (citing Tr. 51-52). However, as specifically noted by the ALJ, Plaintiff testified that she has migraines 6-8 times a month and each lasts 4-12 days; thus, "[e]ven taking the minimum amount she alleges her headaches last and occur, [Plaintiff] testified to having headaches almost every day of the month. This full complement of daily activities is inconsistent with an individual whose headaches are disabling." Tr. 20. Moreover, the ALJ noted that were Plaintiff's "allegations fully credible it is unlikely that she would be able to participate in many of these activities," such as going to car races and sporting events, "all of which are inherently noisy, [and] involve constant contact with the general public." Tr. 19. Based on the foregoing, the activities outlined above were reasonably considered by the ALJ as inconsistent with Plaintiff's complaints of *entirely* disabling limitations. *Molina*, 674 F.3d at 1113; *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) ("[t]he ALJ is responsible for

adequately supported by substantial evidence. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

determining credibility"). This was a clear and convincing reason to discredit Plaintiff's symptom claims.

Third, the ALJ found that despite "alleging mental and/or physical disability, [Plaintiff] has never been involved with physical therapy or mental health counseling." [4] Tr. 19. Unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be the basis for an adverse credibility finding unless there is a showing of a good reason for the failure. *Orn*, 495 F.3d at 638. As an initial matter, Plaintiff correctly notes that the

---

[4] The ALJ additionally found that "despite being advised to quit smoking because of the negative effect it can have on her headaches, [Plaintiff] has continued to smoke cigarettes." Tr. 19. Defendant concedes this reference is "unsupported by the record." ECF No. 13 at 18 n.3. Similarly, the ALJ found that Plaintiff's failure to "wean herself off of prescription narcotics" in order to improve her headaches, as strongly recommended by specialist Dr. Sloop, "reflects negatively on the credibility of her allegations." Tr. 20, 360-61, 364. However, as noted by Plaintiff, her treating provider continued to prescribe Percocet; thus, Plaintiff "should not be faulted for following her doctor's orders and prescription regimen." ECF No. 12 at 16-17. The Court agrees. Regardless of these errors, however, the ALJ's ultimate credibility finding was supported by substantial evidence. *See Carmickle*, 533 F.3d at 1162-63.

ALJ misstated that Plaintiff was never involved in physical therapy. ECF No. 12 at 15. While the record does not contain any treatment notes *from* a physical therapist, there is evidence that Plaintiff did 12 sessions of physical therapy in 2013. Tr. 396. Moreover, the ALJ supported this reason by noting Plaintiff's refusal to undergo an MRI to determine the cause of here alleged right shoulder pain. Tr. 19. However, an ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." Social Security Ruling ("SSR") 16-3p at *8-*9 (March 16, 2016), *available at* 2016 WL 1119029. Here, the ALJ improperly failed to at least consider Plaintiff's reports that she experienced claustrophobia while attempting to get the MRI, and was unable to complete the testing. ECF No. 12 at 15 (citing Tr. 56, 332, 391). However, despite the ALJ's errors in overlooking the aforementioned evidence, the ALJ offered additional reasons, supported by substantial evidence, in support of the finding that Plaintiff failed to pursue treatment. First, despite asserting disabling mental health limitations, which the ALJ found non-severe at step two, Plaintiff has never undergone mental health counseling. Tr. 19; *see Burch*, 400 F.3d at 680 (minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony). Second, and perhaps most notable in the context of her disability claim, Plaintiff "has been afforded three opportunities to undergo

consultative examinations, yet she did not appear at any of the three consultative examinations that were scheduled. Tr. 19 (citing 379-81). As noted by the ALJ, when questioned about this failure to appear at the hearing, Plaintiff testified that she never received paperwork for any of the examinations, does not remember speaking with the SSA regarding transportation to the examinations, did not receive voice messages, and could not explain why she did not attend the consultative examinations. Tr. 19, 43-45. However, the record includes numerous contacts with Plaintiff and Plaintiff's attorney regarding the examinations; there is no indication that mail sent to Plaintiff was returned; and there is no evidence of illness or financial inability to attend the examinations. Tr. 19 (citing Tr. 203-07). Accordingly, the ALJ did "not find that [Plaintiff] has established good cause for missing these consultative exams, and her failure to do so reflects negatively on the credibility of her allegations." Tr. 19; *see Smolen*, 80 F.3d at 1284 (in evaluating the credibility of symptom testimony, the ALJ may utilize ordinary techniques of credibility evaluation). Based on the foregoing, Plaintiff's unexplained failure to seek treatment, and follow through with consultative examinations, was a clear and convincing reason, supported by substantial evidence, to discount her symptom claims. Moreover, even assuming the ALJ failed to properly support this reasoning, any error is harmless because the ALJ's ultimate rejection of Plaintiff's symptom claims was supported by substantial evidence. *See Carmickle*, 533 F.3d at 1162-63.

The Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims.

## CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence. 42 U.S.C. § 405(g). As discussed in detail above, the ALJ properly considered Plaintiff's migraines and obesity at step two; properly weighed the medical opinion evidence; and provided clear and convincing reasons to discount Plaintiff's symptom testimony. After review the court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel, enter judgment in favor of the Defendant, and **CLOSE** the file.

**DATED** October 5, 2018.

*s/ Rosanna Malouf Peterson*
ROSANNA MALOUF PETERSON
United States District Judge